The Honourable Court, all rise. The Honourable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honourable Court may draw near, give their attendance, and they shall return. God save the United States of America and this Honourable Court. Good morning. Please be seated. Court is in session. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case is No. 21-1528, United States v. Colon-De Jesus. At this time, would Attorney Burgess please introduce himself on the record to begin?  William Burgess, appointed counsel for the appellant Jose Colon-De Jesus. I'd like to reserve two minutes for rebuttal, if I could. Yes, you may. Thank you. Colon has already been punished for possessing contraband firearms and ammunition with a 41-month sentence in the case before Judge Arias. The additional 24-month statutory maximum revocation sentence in this case for the same conduct rests on procedural and substantive errors. I'd like to begin with procedural. Procedurally, we know from cases like Morero-Perez and Serrano-Barrios that it's error to rely on unsubstantiated allegations from an arrest report. Yet that's what happened here. Okay, you mentioned the arrest report. I assume that's the drugs you're referring to? Yes. There is a pre-sentence report from the case, the substantive case before Judge Arias. Yes. And that report was never objected. The same defendant. There's no objection. There's mention of that cocaine. So can't Judge Delgado-Colon rely on that? I think the answer is no. In Morero-Perez, there was also an unobjected to PSR, and the court still vacated and remanded on plain error review. That's at 914 F. 3rd at 22. The other thing I'd emphasize is that the PSR is in the other case. In the substantive case, that's governed by Rule 32, which is what the government cites, I believe. This is revocation sentencing governed by Rule 32.1. I don't think the failure to object necessarily follows him over to this case in the way it might stick with him. What you're saying is that a judge in a revocation cannot look at the defendant's supervisor's PSRs or prior PSRs at all? No, I'm not saying that at all. I'm just saying that the failure to object in the initial case should not follow him over into this case. The most important thing on that, I think, is Morero-Perez, where there's also an unobjected to PSR. Counsel, I'm trying to understand why you take the position that that ordinary rule, that the failure to object to claims, allegations, and the PSR, in light of the failure to object, it can be deemed an admission. Is it your position that because of the behavior of the government in this case, the way in which they treated those claims that cocaine was found at the time of the arrest, that that usual rule does not apply, again, because of the way in which the government handled those allegations? Is that what varies, the ordinary rule? I think basically, yes, but I want to be clear on that. Two parts to this response. One is, in Morero-Perez, it was quite clear. The court said, as a matter of judicial policy, no weight should be given in sentencing to arrest, not buttressed by convictions or independent proof of conduct. Proof only of an arrest is no proof of guilt. We think that was pretty clear, and there was also an unobjected to PSR in that case. But to answer your question more directly, yes, we think that the way it was handled, the way the government handled the allegation that Cologne was arrested in cocaine is important in this case. At every opportunity, and the government had several, the government declined to substantiate the allegation. So is it, again, I'm trying to understand your theory. Is it your theory that since the government seemed to take the allegations of cocaine possession off the table, that there was no need for the defendant to object to the portions of the PSR that included those allegations? Is that your theory? I think that's basically right. I don't think the allegation in the PSR figured in the sentencing calculation in the other case. It was in there, but it certainly wasn't. To answer your question, yes, the government took it off the table by the way it handled it in the other case, and also by the way it handled it in this case. So in the other case, the government didn't charge Cologne with cocaine, didn't require him to stipulate to cocaine, didn't require him to forfeit cocaine. And so the record of the other case does nothing to substantiate what's just the bare allegation in the arrest report. In this case, Magistrate Judge Lopez teed this up for the government and offered them an opportunity to substantiate the arrested with cocaine allegation. And the government declined, and that's why Magistrate Judge Lopez entered a finding of no probable cause. And at the sentencing argument in this case, the government appropriately never even mentioned drugs in its argument. So an argument should have been off the table. There's also on the record, and again, when the district judge gets notifications from the probation office, and before that arrest I believe there had been some motions filed, he's testing positive, there's issues with cocaine, take no action at this time, and Judge Delgado was not taking any action. So can't she consider that also, that there's cocaine involved?  And that's not a portion of the analysis that we're challenging. That's at Appendix 31, and that's what the district court refers to to make a separate point. What we are objecting to is the discussion at Appendix 30. And again, there's only three pages of analysis, so this is important. But what we are objecting to is the discussion at Appendix 30 of the allegation where the district court says specifically he was arrested with cocaine, and of course dealing with cocaine, which is addressed at some length in the briefs and the 28J letters. Let me ask when you talk about dealing with cocaine, I think there's a controversy between you and counsel for the government as to the correct translation. I believe the government's position is that dealing with cocaine doesn't mean you're actually distributing it or selling it. It could be that you're dealing because you have it for personal use or you're giving it to other people or you're holding it for somebody else. Do you have any view on that? So two points on that. First of all, we don't think dealing in cocaine is not ambiguous. Our reply brief cites 15 examples of courts using dealing in drugs to mean buying and selling them. The government cites no counterexamples. Also, I'd say sentencing is a very solemn occasion. When a court's explaining the reasons for depriving someone of their liberty, it's not unfair to ask courts to speak clearly when explaining their reasoning. Whatever dealing in might mean in a conversational sense, when you say dealing in cocaine, we think it has a specific meaning and we think the court should be held to it. And this court rejected a similar argument. Even in the absence of an objection? I'm sorry, I think I was talking over you and didn't hear the question. Yes, even in the absence of an objection? I think that's right. In Marrero-Perez, there was no objection to unsubstantiated allegations in an arrest report. Well, no, I'm talking about the dealing in cocaine. In other words, even if we accepted the proposition that that's ambiguous, that it could mean dealing cocaine, without an objection, how do we find that it's obvious that it must have meant that? If you think it's ambiguous, then the failure to object is a problem for us. But I would say that even under the government's reading of the transcript, at the very least the reference to dealing in cocaine is repeating the unsubstantiated allegation from the arrest report that he was arrested with cocaine. They're right next to each other. Under the government's reading of the transcript, one is essentially a paraphrase of the other. So we think the problem still remains. But if you think it's ambiguous and the failure to object against us, then I would say that dealing in cocaine doesn't necessarily have any force apart from the rest of our perspective. And then on the arrest, do we distinguish between a PSR that says he was arrested for X and a PSR that says he engaged in X? I don't think we do because he says he was. The PSR simply repeats the report of his arrest. It adds nothing to it. We suggest a distinction in our reply brief at page 20, and that's actually a mistake. I apologize. The PSR adds nothing to the arrest report. We think this falls squarely under Murillo-Perez. In Murillo-Perez, some of the unsubstantiated allegations of arrest had details to them, and the court still said that that was error. I haven't said anything about my substantive challenge. I see that my time is running out. I'm happy to say a few words about that or save my time. Well, let me just pursue this procedural issue a little more. Sure. I mean, the government points out that to the extent it took the cocaine possession off the table, that was for purposes of finding a violation of supervisory release. It was not – they seem to say they were careful to limit their reliance on cocaine possession to a possible basis for revocation, not for sentencing. How do you respond to that distinction that they make? I don't think there's any meaningful distinction in this case because it's all under the – for one thing, it's all under the preponderance standard. So they had to show probable cause by a preponderance, and any relevant conduct has to be proved by a preponderance. And whatever the government says about carefully limiting their reliance on cocaine, the government did not rely on cocaine at all in this case or in the other case. It was something the district court brought up sua sponte. I mean, Magistrate Judge Lopez offered them the opportunity to provide evidence. We understand that the distinction we're drawing, but I'd say because of the preponderance, we don't think there's any distinction. And finally, at the final revocation hearing, the judge repeats the allegation of cocaine possession, asks along with many other allegations involving guns and ammunition, and asks the defendant through counsel if he admits to all of those, and the response is yes. Why don't we have, at that point, an actual admission that the court could rely upon for sentencing purposes? Sure. I mean, we explain in the reply brief at pages 15 through 18. In context, we don't think that's the fairest reading of the transcript. What Cologne's counsel is admitting is the charges from the other case, not the drugs. Judge Delgado's remarks on the transcript, including her finding of a violation at Appendix 29, seem not to appreciate that there is a distinction between the violations found in the other case and the violations alleged in the probation officer's report. And this is clearest at Appendix 29, where the court refers twice to Docket 51 and also refers to the charges in the other case. There's no acknowledgment by Judge Delgado of Magistrate Judge Lopez's finding of no probable cause. I mean, as you also say in our reply brief, Cologne says he's admitting the charges from the other case, and he starts to explain, as far as we can tell from the transcript. He gets cut off. The conversation moves on. And in Appendix 23, lines 3 through 16, the court refers to the admissions of the violation. Sorry, refers to admitting the violations in the same breath as the charges from the other case. So we think what he meant to admit to was the charges from the other case. We think the district judge understood that, and we think the drugs dropping out of the picture was lost on the district court, as far as we can tell from the transcript. Just one more question. There is a motion. The probation office filed a revocation motion, and I believe your client filed a motion admitting he possessed the cocaine in that motion. Do you have anything to say about that? Honestly, I'm drawing a blank. I'm not aware. I don't recall my client's motion admitting possession of cocaine. It's mentioned in the government's brief at page 24, but I'll ask counsel to address that. I'll see if I can address it on rebuttal. I apologize. Thank you. Thank you. Thank you, counsel. At this time, counsel for the appellee, United States, please introduce himself on the record to begin. Good morning, Judge Chiata. May it please the court, David Bornstein on behalf of the United States. This court should refer Mr. Klone's sentence because he has not shown any error, plain or otherwise. He raises two procedural challenges and two specific substantive challenges to his sentence, and the parties agree that he has forfeited his procedural challenges so they're reviewed for plain error only. The first one concerns the district court's finding that cocaine was seized from him, which appears on page 30 of the appendix. Mr. Klone asserts that that finding was erroneous because nothing in the record supports it except for an unsubstantiated allegation in the probation officer's second motion notifying the court of his supervised release violations, but that's not true. First, it is supported by an uncontested portion of the PSR from his new federal case, setting forth his offense conduct. Counsel, why? Yes. It seems to me there is something unfair about the way in which the government is handling this cocaine possession issue from the very beginning of this case, starting at the time of the plea to the underlying criminal charges. He pleads to account that has nothing to do with drugs. From the very beginning of this case, the government has signaled they have no interest at all in pursuing the cocaine possession. Under that circumstance, why should a defendant feel they have to object to a portion of the PSR that references an arrest report that does have allegations of cocaine possession? Why should they feel any need to object when the government has unmistakably signaled that it's not part of the prosecution? They don't care about it. Several reasons, Your Honor. First of all, there is Criminal Rule 32I3A, which permits the sentencing court to accept as a finding of fact any unobjected to portion of the PSR. Second, there is simple sentencing court discretion. Congress in 18 U.S.C. 3661 clearly stated that no limitation may be placed on the facts about the defendant that a sentencing court may consider. Indeed, my friend's position, which is that a sentencing court may only consider those facts which the parties provide to it, runs against not only Section 3661, the Supreme Court's recent pronouncement in Concepcion against the United States, that a sentencing court may rely upon any fact about the defendant so long as there is no statute or constitutional provision saying otherwise. And, Judge Lopez, your own decision in 2019 in the United States against Cruz Olaveria, which the site is 919F3R661, and I'd point you to pages 665 and 666, it's actually very analogous. In that case, the defendant pled guilty. However, the drug-related counts of his conduct were dismissed. So he pled guilty to some counts but not the drug-related counts. He was then revoked on supervised release. The revocation court relied upon the uncontested portions of the PSR from his new case in deciding that it was going to set its sentence higher. It was an upwardly variant sentence, and you said that was fully appropriate. It was fully appropriate because it does not matter that he did not plead guilty to the drug-related counts. His conduct, not simply an arrest report, but his conduct was set forth in the PSR. He did not contest that, and thus, under Criminal Rule 32I3A, he could rely upon it. Now, my friend here raises for the first time the argument that Criminal Rule 32I3A should not apply at a revocation sentencing because Rule 32.1 applies. First, that is a new argument being raised at oral argument, thus it's waived. But second, at best be reviewed for plain error, and there can't be plain error because of the decision in Cruz Oliveria blessing the ability of a district, sorry, a revocation court to rely upon a PSR from a new federal case in revoking the defendant on his old federal case. Counsel, let me ask. My experience for probably almost two decades in the District of Puerto Rico is whenever you have a pre-sentence report and charges are dismissed, the pre-sentence reports discuss the dismissed conduct, and they will address that. And if anybody has any objections, then you have to object to that particular mention of whatever, you know, for example, drugs were found or weapons, and one charge was dismissed. They're still going to be mentioned of all the dismissed conduct. Am I correct? Exactly. You're absolutely correct. Criminal defense attorneys know, prosecutors know, and judges know that the PSR is to set forth the body, you know, the core of the body of the facts that the sentencing court may rely upon. So it is always the onus of the defendant to object to facts in that report. And that goes under the guidelines when they were mandatory and now not mandatory to relevant conduct, finding relevant conduct. Absolutely, Your Honor. Guideline enhancements also. For example, in this scenario, for example, this had been a sentencing rather than supervised relief violation. The judge could have, for example, made a finding, you know, there's drugs, there's a firearm, the firearm has been dismissed or drugs have been dismissed, but we're going to add points under the guidelines for XYZ. That's done every day under 3553A or guidelines, correct? Yes. And it's contrary to basic sentencing law again for a person to state that a sentencing court may only rely upon those facts that the parties present to it. So with respect to the PSR, do we distinguish between a PSR that says the defendant was arrested for X and a PSR that says the defendant engaged in X? No. Don't we distinguish between those two? Yes, Your Honor. And how does that distinction apply here? The distinction applies here because my friend keeps asserting that the PSR in the defendant's new federal case simply set forth a bear arrest allegation. That's not true. If it were just a bear arrest allegation, the rule of Morrell-Perez would apply. But instead, it went into the defendant's conduct. I would ask you to look at pages 20 and 21 of the Supplemental Appendix, paragraphs 12 through 14, where the PSR states that when the defendant was arrested, a bag was taken from him. The bag contained 18 capsules containing a white, powdery substance which field-tested positive for cocaine. And the defendant later admitted that he possessed the bag and the contents of the bag belonged to him. That was a sufficient basis for the district court's finding here. And, indeed, I'd like to reiterate that PSR was properly before the court. Below, on pages 24 to 26 of the Appendix, and on appeal, on page 5 of my friend's opening brief, he asked the court to look at the PSR from his new federal case in order to look to find the facts that control here. It is simply untenable for him to state that courts may rely on the PSR to find facts that are favorable to him and yet err when they rely upon the same PSR to find facts unfavorable to him. I'd like to now turn to a second procedural complaint. Before you go to the second one, briefly, in your briefing page 24, you mentioned that Colon admitted at some point he had possessed a cocaine. Yes. Tell us where you get that from. Exactly. So there were two motions by the probation officer setting forth the defendant's supervised release violations. That is from the first motion by the probation officer, setting forth that the defendant, I think within one year of entering supervised release, started to test positive for cocaine. He tested positive on three separate occasions in April and September of 2018, and that was where he signed a drug admission form admitting that his continued use of drugs. And that is something Judge DelGalvalon could consider for purposes of disposition or sentencing. Absolutely. Not only is it uncontested, but it's also set forth in the PSR, in a section of the PSR that my friend in his opening brief cites, namely that the defendant tested positive five times because after the court decided not to provoke him, he tested positive for cocaine on two more occasions in 2019. So the defendant's second procedural claim of error concerns the district court's finding that in 2009, he was convicted for drugs and still he's dealing in cocaine. Counsel, let me, so you know what my concern is, let me address the question to you. Dealing is a term of art in drug prosecutions. When an experienced judge, such as we have here, refers to dealing, that's not some subtle way of referring to possession. Dealing means that you're selling the stuff. Judges know that. That's how they use the term. And the suggestion that there's some ambiguity about that strikes me as really a stretch. And given the significance in explaining her sentence, the significance that she attaches to the dealing in drugs, it's hard to understand how she could have thought he was just in possession of the drugs. So I find it difficult, and I think you're going to suggest that at most it may be ambiguous. I find it difficult to find any ambiguity in her use of that very familiar term for drug prosecutions. Let me explain our position. If you look at page four of the defendant's reply brief, we agree on two basic principles here. The verb to deal in has multiple meanings, and you need to look at context to determine which meaning applies. And that is where my friend runs into difficulty. Because every other time the district judge, and indeed anyone else, in the entire revocation proceeding mentioned the defendant in cocaine, it was always pertaining to his personal use and possession of cocaine. So this context strongly indicates that when the judge said that he was dealing in cocaine, it meant that he was using or involved with cocaine. And indeed, I'd like to highlight, my friend says his challenge or suggestion is that the word- Excuse me. Somebody who is using cocaine for personal use is arguably dealing in cocaine? Yes. It's a permissible use of the word. I think if the judge had said- Well, that may be true in a dictionary sense, but in a real world sense, that strikes me as a very difficult argument to make. Your Honor, in our 28-J letter, we cite the case of Vega Sosa, where Judge Dominguez in the District of Puerto Rico said that the defendant was found to be dealing in a drug trafficking activity as a protector of the drugs. He was not dealing in the opportunity to protect drugs. He was involved in the drug trafficking activity as a protector of drugs. I looked at the OED, the Oxford English Dictionary, over the weekend. The definition to deal in that the government is using is Definition 215, unless you think that's really far down the list. The one that my friend is urging is Definition 213. And under the historic examples that the OED offers, and they are historic examples, is a letter from Lord Chesterfield to his son, where he says, All malt liquors fatten and also bloat. In fact, let me read it. I hope that you are not dealing much in them. Let me make sure that I read that correctly to you or recalled it correctly. All malt liquors fatten or at least bloat, and I hope you do not deal much in them. I believe that when Lord Chesterfield is telling his son, I hope you do not deal much in them, he is not saying that if you sell malt liquor, you will grow fat and bloated. I think he meant that if you use or consume it. My point, Your Honor, is simply... What you're saying is we have to look at the whole context of everything. You have to look at the context. At the end of the day, if the court had simply said he was still dealing with cocaine, used a different preposition, there would not be any argument about plain air. So dealing with cocaine, for example, would be different from I'm dealing cocaine or if I'm dealing with cocaine, I might be like Lord whatever, quote, what was his son. I think dealing with would be clear. But dealing in, a colloquial usage of the term means to use. And we both agree you must look at context to see what the district court meant. And finally, I'd like to highlight if, as my friend says, it is true that the only way to understand the court is that the court was saying that the defendant was still buying and selling cocaine as a business, there would have been an objection because there is no basis in the record for that. I'd like to make one other point in that regard. The defendant on, I believe it is page... It's in his reply brief. I apologize that I'm not recalling the page right now. But page 11 of his reply brief. He asserts that when the court, in sentencing him, talks about his repeated conduct, the court was referring to both his gun and drug possession. But if the court's talking about repeated conduct, again, it's clear, all that the defendant has ever done is use and possess cocaine. So all of this context together shows, especially on plain air review, it is not clear or obvious that the district court said that he was buying or selling, but rather he was merely possessing. Thank you, Mr. Boyce. Any more questions? Thank you. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the appellant reintroduce himself on the record to begin? William Burge is appearing again on behalf of Jose Colon de Jesus. I'd like to make three points in rebuttal, if I can. First of all, Judge Helpe, I promised you an answer. Do you refer to the government's statement at page 24 of the red brief that Colon admitted the allegations in the probation officer's revocation motion and the motion alleged that he possessed cocaine? I believe there the government's referring to the probation officer's motion, and so when he says that Colon admitted he possessed cocaine, I think that's the portion of the transcript we address at pages, I believe, 15 through 18 of the reply brief. Colon, in context, is admitting the violations found in the other case, not every last word of the probation officer's report. The second point I'd like to make is I didn't hear any mention of Marrero-Perez in the government's argument. We think Marrero-Perez states a pretty clear rule and also dealt with it and objected to PSR. Well, I think the distinction the government is making is between a PSR that says he was arrested and a PSR that said he did something. I think the PSR simply paraphrases the arrest report's description of his conduct. In Marrero-Perez, some of the arrest allegations were undetailed, and some of them were. Marrero-Perez said they were all out of bounds. I'm looking at 914F23 for that in Marrero-Perez. And finally, on the dealing with cocaine point, I'd refer the court to the Rodriguez-Melendez case, which dealt with a similar argument about a district court's reference to testing positive. This is similar to that, and the government's argument is essentially that their reading has to be right because this was just so absurd and there's no basis for it. I respectfully suggest that doesn't help the government, that Judge Lopez has it exactly right in referring to dealing in cocaine. Dealing is a term of art. Dealing in cocaine has a specific meaning. The law punishes dealing in cocaine much more harshly than simple possession or use. I heard a lot about dealing with. That's not what the district court said. And so for the reasons in our briefs, I'd respectfully request that the court vacate and remand. Any more questions? Just to comment, counsel, I know you work for a firm in D.C., a large firm, and I just commend you for accepting CJA appointments and continue to do so and encourage others to do so. I appreciate that. Thank you. I would like to ask one question, if I might, please. Thank you. Even if the court meant dealing as I think it meant dealing, you have the issue on plain error review of establishing that it affected the substantial rights of the defendant. I mean, here we have a case where you have guns, ammo, found in the possession of the defendant. The district court is clearly very troubled by that. The government argues that that is what really drove the sentencing decision of the court, the guns and the ammo, and so the concern about drugs was so secondary that it would really be very difficult to find that the sentencing decision would be any different here. And in that sense, even if there was an error by the district court, it would not affect the defendant's substantial rights. I mean, it seems to me a pretty powerful argument, given the way the judge looked at this case. How do you respond to that? Sure. So we know from Rodriguez-Melendez that the third prong of plain error analysis, the way it applies, is the improper consideration doesn't have to be the main factor, doesn't have to be the only factor. It needs to be salient. And as you said at the beginning, there has to be a reasonable probability that would have resulted in a different sentence. I think the district court's analysis is only three pages, and we think the drugs are prominent enough, and I'd say three quick things about that. Appendix 29, as I mentioned, when the judge finds the no probable cause, when the judge finds a violation of supervised release, she makes no mention of the no probable cause finding and doesn't seem to appreciate that drugs have dropped out of the picture. At Appendix 30, right after noting the 3553A factors, at lines 8 through 9, so when the analysis is about to start, the very next thing the judge talks about is increased seriousness, and the increased seriousness seems to refer to the drugs and the weapons, and that takes up a page of the analysis. The guns and the drugs go together in that sense. And then finally, I'd say at Appendix 30, as we flag in our reply brief, Colon's main argument was about the mitigating circumstances of his case. The undisputed history of nonviolence and cooperation with law enforcement. The district court acknowledges that at Appendix 30 and immediately after the district court starts talking about the drugs. We think the drugs, I agree they were not the main factor, they were not the only factor, but in our view they were salient and there is at least a reasonable probability that the sentence would have been different but for the improper consideration of drugs in this case. All right, thank you. Thank you, Mr. Burgess. Thank you, counsel. That concludes argument in this case.